PEOPLE v GRAYER

Docket No. 214880. Submitted May 5, 1999, at Lansing. Decided June 4, 1999, at 9:10 A.M. Leave to appeal sought.

Curtis Grayer was bound over by the 10th District Court, Franklin K. Line, J., on charges of third-degree fleeing and eluding, resisting and obstructing an officer, and driving with a suspended license. The Calhoun Circuit Court, James C. Kingsley, J., granted the defendant's motion to quash the fleeing and eluding charge, finding the testimony did not reveal a "substantial effort" by the defendant to flee or elude, or substantial speeding up over a distance, or any effort to "really" avoid the officer. The prosecution appealed by leave granted.

The Court of Appeals *held*:

1. The third-degree fleeing and eluding statute does not require a certain level of speeding or length of chase. The preliminary examination testimony supports a finding that the defendant committed all the elements of the offense, including the intent to elude.

2. The terms "flee" and "elude" both connote an intent to take affirmative action, not simply to fail to submit.

3. The district court did not abuse its discretion in finding probable cause with regard to the charge of fleeing and eluding. The circuit court improperly granted the motion to quash.

Reversed.

CRIMINAL LAW — THIRD-DEGREE FLEEING AND ELUDING — ELEMENTS.

There are six elements necessary to establish third-degree fleeing and eluding: the law enforcement officer must have been in uniform, performing lawful duties, and the officer's vehicle must have been adequately identified as a law enforcement vehicle; the defendant must have been driving a motor vehicle; the officer, with the officer's hand, voice, siren, or emergency lights, must have ordered the defendant to stop; the defendant must have been aware of having been ordered to stop; the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught by speeding up the defendant's vehicle, turning off the vehicle's lights, or other acts or conduct of the same kind, class, or character; and some portion of the violation must have taken place in an area where the speed limit is thirty-five miles an hour or less, or the

defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law; although some intent on the part of the defendant to flee or avoid capture must be shown, there is no requirement that the defendant's speeding exceed a certain level or occur over a long distance (MCL 750.479a; MSA 28.747[1]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Susan K. Mladenoff*, Prosecuting Attorney, and *Jennifer K. Solberg*, Assistant Prosecuting Attorney, for the people.

*David E. Gilbert*, for the defendant.

Before: GRIBBS, P.J., and KELLY and HOOD, JJ.

PER CURIAM. Defendant was charged with third-degree fleeing and eluding, MCL 750.479a(3); MSA 28.747(1)(3), resisting and obstructing an officer, MCL 750.479; MSA 28.747, and driving with a suspended license, MCL 257.904(1)(a); MSA 9.2604(1)(a). After the district court bound him over on all the charges, defendant moved to quash the fleeing and eluding charge in the trial court, claiming that there was insufficient evidence to establish probable cause that he had committed the offense. The trial court granted the motion and quashed the fleeing and eluding count. The prosecution appeals by leave granted, and we reverse.

The prosecution argues that there was sufficient evidence to support the charge of third-degree fleeing and eluding[1] and that the trial court should not have

---

[1] There are four degrees of fleeing and eluding, ranging from fourth-degree fleeing and eluding, which is a felony punishable by imprisonment for not more than two years or a fine of not more than $500, or both, to first-degree fleeing and eluding, which carries a maximum penalty of fifteen years in prison or a fine of $10,000, or both. MCL 750.479a; MSA 28.747(1).

quashed the count related to that charge. We agree. Generally, a circuit court's decision to grant a motion to quash a felony information is reviewed de novo to determine if the district court abused its discretion in ordering a bindover. *People v Northey*, 231 Mich App 568, 574; 591 NW2d 227 (1998). However, in this case, we are also called on to review the trial court's decision regarding whether defendant's conduct fell within the scope of MCL 750.479a(3); MSA 28.747(1)(3). The decision whether alleged conduct falls within the statutory scope of a criminal law involves a question of law, and we also review questions of law de novo. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998); *People v Hamblin*, 224 Mich App 87, 91; 568 NW2d 339 (1997).

No prior cases have analyzed what conduct constitutes third-degree fleeing and eluding under MCL 750.479a; MSA 28.747(1). We are thus confronted with an issue of first impression.

The goal of statutory interpretation is to ascertain the intent of the Legislature. *People v Sheets*, 223 Mich App 651, 656; 567 NW2d 478 (1997).

> The first criterion in determining the Legislature's intent is the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither permitted nor necessary. In interpreting statutes, words are to be given their common, generally accepted meaning. The court should presume that every word has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. [*People v Fox (After Remand)*, 232 Mich App 541, 553; 591 NW2d 384 (1998) (citations omitted), lv pending.]

MCL 750.479a; MSA 28.747(1), as amended effective June 1, 1997, provides in part:

(1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the vehicle driven by the police or conservation officer is identified as an official police or department of natural resources vehicle.

(2) Except as provided in subsection (3), (4), or (5), an individual who violates subsection (1) is guilty of fourth-degree fleeing and eluding, a felony punishable . . . .

(3) Except as provided in subsection (4) or (5), an individual who violates subsection (1) is guilty of third-degree fleeing and eluding, a felony . . . if 1 or more of the following circumstances apply:

(a) The violation results in a collision or accident.

(b) A portion of the violation occurred in an area where the speed limit is 35 miles an hour or less, whether that speed limit is posted or imposed as a matter of law.

(c) The individual has a prior conviction for fourth-degree fleeing and eluding, attempted fourth-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct.

The statute criminalizes the conduct of a person who fails to obey the direction of an officer by "increasing the speed of the vehicle, extinguishing the lights of the vehicle, or *otherwise* attempting to flee or elude . . . ."[2] The words "flee" and "elude" as used in MCL 750.479a; MSA 28.747(1) have not acquired a

---

[2] The use of the ejusdem generis clause "or otherwise attempting" means that acts or conduct of the same kind, class, or character as speeding or extinguishing lights are also included within the offense.

particular meaning in our courts. *Random House Webster's College Dictionary* (1997) defines "flee" as "to run away, as from danger or pursuers; take flight; to move or pass swiftly; fly; speed." It defines "elude" as "to avoid capture or escape detection by; evade." *Id.* Both terms connote an intent to take affirmative action, not simply fail to submit.

On the basis of a plain reading of the statute, there are six elements necessary to establish third-degree fleeing and eluding: (1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop, (4) the defendant must have been aware that he had been ordered to stop, (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law as listed in MCL 750.479a(3)(c); MSA 28.747(1)(3)(c). See CJI2d 13.6c. The clear language of the statute reveals no requirement that the defendant's speeding exceed a certain level or that the speeding occur over a long distance in order for the elements of the statute to be met. The elements do, however, require the prosecution to demonstrate that

the defendant refused to obey by trying to flee or avoid capture, which element necessitates a finding of some intent on the part of the defendant to flee or avoid capture.

The evidence at the preliminary examination revealed that on January 28, 1998, a uniformed sheriff's deputy observed a vehicle with defective taillights pass his marked police vehicle. The deputy pulled out behind the vehicle, which was undisputedly driven by defendant, and followed it to a stoplight. After the stoplight, as the vehicles were approaching railroad tracks, the deputy activated his flashing emergency lights in an attempt to signal defendant to stop. Defendant did not stop, but instead accelerated beyond the thirty-mile-an-hour speed limit and continued on his way. The deputy then activated his siren, called out that he was following, and continued to follow. The deputy later turned his siren off because the defendant's vehicle, although speeding, was not traveling at a high rate of speed. The deputy kept his emergency lights activated. He followed the vehicle for approximately one mile as it made two left turns and ended up going through an alley or "some back yards" before coming to a stop behind a residence. Both defendant and the other occupant of his vehicle got out of the vehicle, refused to heed the deputy's call to stop, and started to run around the house. Defendant ran onto the porch of the house, sat down on the steps, and when the deputy approached, pointed toward the side of the house and said something to the effect that "he went around that way," apparently pretending that he was not the person for whom the deputy was looking. The deputy informed defendant that he was looking for him, and the two

began to argue. Eventually, the deputy informed defendant that he was under arrest, and defendant pushed and struck the deputy. Other officers arrived and defendant was taken into custody. Defendant's wife, who had been with him in his vehicle, testified that she saw the officer following them, commented to defendant that the officer was going to stop them, and that defendant kept driving.

The trial court determined that, in its view, the testimony did not reveal a "substantial effort" by defendant to flee or elude, that there was no substantial speeding up over a distance, and that there was no effort to "really" avoid the officer. It therefore granted the motion to quash. We disagree with the trial court's determination that defendant's conduct did not fall within the scope of MCL 750.479a(3); MSA 28.747(1)(3) as written. Keeping in mind that the statute does not require a certain level of speeding or length of chase, the preliminary examination testimony supports all the necessary elements, including that defendant intended to elude. Defendant accelerated his vehicle after the officer activated his flashing lights, which, under the statute, appears to be sufficient evidence from which to infer intent. In addition to that testimony, however, there was also other circumstantial evidence to conclude that defendant intended to elude the officer. The deputy followed defendant for approximately one mile with his emergency lights on and with his siren activated for a portion of that time, and when defendant finally emerged from the vehicle, he ran away from the deputy and then attempted to misdirect him. This testimony reasonably leads to the inference that defendant's intent in not stopping when ordered to do so was to avoid

capture, in other words, to elude the officer. See *People v Perez-DeLeon*, 224 Mich App 43, 59; 568 NW2d 324 (1997) (because it is difficult to show intent by direct evidence, circumstantial evidence is often necessary and will suffice to show intent). Because there was competent evidence to support a finding that defendant committed a violation of MCL 750.479a(3); MSA 28.747(1)(3), the trial court improperly granted the motion to quash and the district court did not abuse its discretion in finding that there was probable cause to believe that a felony was committed by defendant.[3]

We acknowledge that the reported cases under previous versions of MCL 750.479a; MSA 28.747(1) involve conduct that exceeds the type of conduct in this case. In *People v Mayfield*, 221 Mich App 656, 658; 562 NW2d 272 (1997), the defendant initially stopped his vehicle, but then accelerated away as the police officer approached him after getting out of her own vehicle. The defendant then jumped out of his moving vehicle and fled on foot. In *People v Harrell*, 54 Mich App 554, 556-557; 221 NW2d 411 (1974), aff'd 398 Mich 384; 247 NW2d 829 (1976), the defendant engaged the police in a high-speed chase through city streets while committing other traffic offenses along

---

[3] "A district court must bind a defendant over for trial when the prosecutor presents competent evidence constituting probable cause to believe that (1) a felony was committed and (2) the defendant committed that felony. MCL 766.13; MSA 28.913; MCR 6.110(E)." *Northey, supra* at 574. Circumstantial evidence and reasonable inferences derived from that evidence are sufficient to support a bindover. *People v Terry*, 224 Mich App 447, 451; 569 NW2d 641 (1997). The prosecution is not required, at the probable cause hearing, to prove the elements of the crime beyond a reasonable doubt. *Id.* Moreover, where there is credible evidence to both support and negate the elements of the crime, questions of fact exist that must be determined by the jury. *Id.*

the way. While we are mindful of the more extreme behavior in these reported cases, we reiterate that the statute itself does not limit fleeing and eluding to high-speed or long-distance chases. The Legislature could have limited the statute in those manners if it had chosen to do so. It did not.

Reversed.